Randy Bachrach, appearing for Appellant Raymond Vaught. Your Honor, the issue in this case is pretty straightforward, dealing with exhaustion. Keep your voice up. That would be helpful. Okay. The issue in the case is pretty straightforward, as we know from the briefs, dealing with exhaustion of administrative remedies in an ERISA case. The appellant has presented a number of arguments why he believes that his case should have been heard on the merits rather than defeated on a technical forfeiture. On the other side, really it all boils down to one argument, and that is that there is some language in an EOB, explanation of benefits letter, which is not found in the summary plan description, which arguably, and they do argue, provides a basis for claiming that there needs to be some type of substantive language in the appeal notice that the claimant gives. The problem with that, as pointed out in the briefs, and I don't want to go over that territory too much, the summary plan description contains no such language. None of the ERISA regulations contain any such language, and they have cited no case law to support that theory. So what we're left with from our perspective is a classic case of denial of the most bedrock principle of ERISA, which is that a claimant is entitled to a full and fair review. Neither happened in this case. Assuming that we found that the EOB was incorporated by reference into the summary plan description, with its requirement that you state the reasons for why the plan should look at the claim again, did your client adequately raise his claim? Did he satisfy that requirement? I believe that is the case, Your Honor. And I would point the Court to the exhibit number 16 in the record, or rather, number 16, exhibit 6, which is the EOB. I'm sorry, 16, and then you said something I didn't hear. It's exhibit 6 of the index number 16 in the record. It's exhibit 6 in tab 16. Okay. This is the EOB in question. And that requires you to clearly explain that you are appealing a claim denial and the reason why you think the claims administrator should reconsider your claim. Is that the language you're pointing to? Right. On page 418. Right. I want to point out, however, that it's clear that this language is not from the summary plan description for a lot of reasons. First of all, it refers to a two-level application. which doesn't exist. That strongly infers that this language, which was produced in a form or by a third-party claims administrator, is a generic form that was never intended to apply to this plan specifically. And preceding that language that Your Honor just quoted, there is language that does track the plan, which says you can review documents relevant to the claim and submit written comments and evidence supporting your claim. That's a permissive right. Immediately after that is the purported mandatory language that you have to submit the reason why you think the claim was improperly denied. Now, to specifically answer your question, Your Honor, if you go to Exhibit 8 in that same tab, this is the letter from the plan's attorney to Mr. Rocco that was Mr. Vaught's first counsel. And number one at the bottom acknowledges what everybody's talking about here, which is the specific reason for denial of coverage. I'm sorry, I said this is the letter to Mr. Rocco. But it acknowledges that what everybody's talking about is the DUI exclusion in the plan. And then later in response to that letter, Mr. Rocco wrote back again, Exhibit 9, page 391. And at the bottom of the letter, if there was ever any doubt in anybody's mind that everybody knew what we were talking about here, which was a DUI exclusion, that doubt should have been totally erased in this letter. Next, please advise how it is that you intend to prove that Ray and Kathy Vaught received notice of the plan's terms, in particular the exclusion cited driving under the influence of alcohol or drugs. Now, after all of that, and then subsequent letters asking for plan documents in order to properly appeal the case, for them to say, no, you didn't use the magic words. You didn't say you were appealing the DUI, which clearly they were. And you have no right to appeal. You have no right to a lawsuit. You have no right to judicial appeal. You are you lose everywhere. Can I ask a question here? There's something that's puzzling me, and that is that, for example, in Exhibit 8, that is to say the letter on March 16th from Mr. Mitchell Malamud, if I'm pronouncing that correctly, at the bottom of that first page, paragraph beginning, assuming for purposes of the letter, assuming for purposes of the letter only that the covered person had previously forwarded a written notification of the plan of your acting as an authorized person, I would address your appeal as follows. This sort of never, never land of, well, this isn't an appeal. But if you were appealing, I would do the following. That goes to the first paragraph in his letter, which is even equally bizarre, Your Honor. This is to acknowledge your letter of February 9th requesting an appeal. Well, apparently the problem that this lawyer thinks he has is that there's been no authorization of Mr. Rocco to act on behalf of the claimant. Yet we have in the file that there was such a letter sent. He just never got it. Mr. Malamud keeps asking Mr. Rocco for the authorization. Mr. Rocco never seems to respond to that. These guys keep talking past each other. One of the questions I have coming out of this is did the plan ever treat this as a real appeal and deny it? As I read the briefs that have been submitted here, they're on both sides of this issue, Your Honor. I'm not sure I want you to read the briefs. I want you to read the record and tell me what you think. Did the plan actually treat this as an appeal and deny it as an appeal? Or did they just keep saying, well, if this were an appeal, this is how we would treat it? They never reached the merits of the appeal. So the best I can say is the appeal was rejected. That's what it seems to me. Well, no, it would be better for you to say they never decided it because your client's better off if they never decided the appeal. Well, they didn't decide it because it was rejected.  Well, I'm not sure it's semantic. That is, the plan has an obligation to decide an appeal within a certain period of the time the appeal is filed. If they decide the appeal, their decision gets a certain amount of deference. If they don't decide the appeal, their decision is not entitled to deference. That is to say they simply didn't provide benefits, but they don't have the deference accorded to their decision on appeal. So I don't think it's merely a matter of semantics without a difference. So I repeat the question. And, of course, the other side is listening, and I'll want him to answer the same question. Did they, in fact, decide an actual appeal? Or are they just talking never, never land? If you did have an appeal, here's what we might say to you. Absolutely, they never decided an appeal, Your Honor. Absolutely. Now that you've understood what my consequence might be if they did not have an appeal. I think I've argued that adequately in the brief, too. I have. They never decided this appeal. Well, if that's so, and it might be. I guess I want to hear from the other side. What is Mr. Rocco doing every time he gets a letter saying where's the authorization and not responding to that request? I'm not sure that's accurate, Your Honor, of the description of the evidence. Let me see. It seems to me that on the second page there on Exhibit 9 of Mr. Rocco's letter, Okay, I'm with you. The fourth paragraph. Please obtain, review, and confirm in writing that a written authorization to the plan has been provided by the covered person designating this office to act as authorized representative. Okay, so he says, listen, have a look. It's in your file. Yes. And I think I did the same thing in my letter. Okay. So that's his response. It was Mr. Melamut that didn't respond. He never responded to that request. Okay, I got it. So going back to my assumption that the EOB is part of the plan, and although there's, as you pointed out in the letters, indication that the DUI was the issue, Mr. Vaught, your client didn't specifically come up with a theory as to why he was entitled to coverage, notwithstanding the police report and notwithstanding that exclusion. Was he required to raise that issue in order to effectively appeal? No. Explain why that is. There's nothing in the summary plan description that even faintly, remotely alludes to that as an obligation. There's nothing in the regulations. There's nothing in the case law. There's just simply nothing that even comes close to that type of requirement, and it just flies in the face of basic fundamental ERISA principles of fairness, that you have a right to say, I appeal. They have a right to say, fine, we sustain our denial. There's just nothing that says you have to present anything to them other than to say, I appeal. Now, he intended, there's clear evidence that. That doesn't make sense. I appeal because I part my hair on the left? I appeal because this is a grand country? No. Don't you have to say, I appeal because the DUI doesn't apply to me because I interpret it to mean that it only excludes damage caused to me by alcohol? Your Honor, when the EOBs were provided, there was no reference to any plan provision upon which the denial was based, other than a general vague reference to see something about motor vehicle accident-related charges, which there wasn't anything in the plan specifically saying that. So when his original appeal time expired, which was referenced in the last letter from the plan on September 12th, that would have been 180 days from the original EOBs. He didn't know at that point even what the specific denial was based upon. So all he could do was say, I appeal. Give me the documents, the plan documents and the claim documents that I need so that I can now process my appeal adequately. Is there an obligation stated in the plan or an obligation stated in ERISA that requires a plan that has denied benefits to state reasons for the denial? Absolutely. That's bedrock. And that is in the summary plan description and that is in ERISA. And that's what he asks for when he says, when Rocco sends that first letter, okay, what are your reasons? Exactly. And they say, well, if you were appealing, our reasons might be. And then he says, okay, well, let's talk about those reasons in the letter that you're quoting to us. Like, please advise some more stuff. Yes. It's hard to think that that's not an issue, quote, if this were an appeal, close quote. Well, he never had an opportunity to present that type of substantive evidence. Now, the problem that we get into here as the district court sort of created here is this notion that a plan administrator can rule on the validity of a claimant's appeal on whether it's sufficiently substantive. There's just nothing that I'm aware of in ERISA that would permit that. Let me do this, and I realize this is leapfrogging a little bit, but sometimes you don't want to send people through an exercise that would be pointless. And you're just asking us to send this back so that this question of the exclusion of alcohol can be adjudicated. What's the specific language of the alcohol exclusion in the plan? Treatment relating to dot, dot, dot, driving under the influence of alcohol or drugs. Yeah. Put my nose in the record, would you? On page 23 of the plan document. And where is that in the ER? That is at ‑‑ I think that was submitted in your supplemental. Okay. That's this fancy thing? Number six, tab 16 of defendant's supplemental. Okay, and it's on page 23, I heard you say? That was on page ‑‑ lost it there just for a second. Page 23. Page 23, and where do I find this? Driving, no, that's not it. Yes, it's ‑‑ Driving under the influence of alcohol or drugs, that's the exclusion. Right. We need to read the preface, the preparatory. It doesn't require any expenses incurred for services and specialized medical care or treatment relating to arising out of or given in connection with any of the following. Driving under the influence of alcohol and drugs. How's he going to get around that? Well, we're not, of course, not here on the substantive issue today, but ‑‑ Well, if the appeal had been allowed to go forward, there would have been evidence presented at some point in that appeal that all of those charges, those DUI charges were dropped for lack of evidence. And there would be evidence that that blood alcohol reading was wrong? Well, there wasn't evidence in the dismissal of the claim, but if you look at Arizona law specifically states that a prosecutor or the court has no authority to dismiss any charge within that ARS section unless it's based upon insufficiency of evidence. And it was dismissed. Now, there are a lot of, you know, at some point perhaps his former attorneys who were involved in that could come in and testify as to what they knew about it. So your argument would be not that if he were a drunk at the time of the accident, this wouldn't apply. Your argument would be he wasn't drunk. He wasn't, but they haven't proved it. That will be his testimony. That is his testimony, and the evidence will support it. So he'll say, oh, I wasn't drunk, and that blood alcohol reading was wrong. Right. But that dismissal didn't occur until near the end of the period of time that we're discussing here today, which is late September 2004. It was sometime just immediately prior to that. Did he ever try to introduce that evidence in what might have been an appeal had it been an appeal? Well, their time was up, according to them. There was never no. The answer is no, but because they called time out and said that he had no more time. And not only that, they disregarded their March 16th letter, which allowed him additional time, and retroactively went back to the date of the original denials. So he had about eight months, as I read the record, from the time of the denial to the time when they said, you know, we don't have your authorized representative on file, so we deem you not to have appealed or whatever the language said. And during that period, he didn't raise a substantive argument. And the district court seemed to say, look, if you didn't raise your substantive argument to the plan, we're not going to hear it for the first time in district court. Now, why isn't that a reasonable approach to analyzing? Because it violates the plan. There's nothing in the plan that allows them to do that. There's nothing in the regulations that allow them to do that. The plan does request, if you go with my assumption that the EOB is incorporated, it does say you have to state your reasons, which seems like sort of a reasonable request. Well, as we discussed earlier, there is a specific ERISA statute and regulation that states that all claims procedures, and, in fact, it states that a claim procedure will not be deemed reasonable, a plan's claim procedures will not be deemed reasonable unless they are contained in the summary plan description. Now, I understand that you're somewhat saying that perhaps the EOB is incorporated into the summary plan description, and maybe that would be true if they were not in conflict. But here we have an EOB which is clearly in conflict with the summary plan description, which violates the ERISA regulation that says it will not be deemed reasonable if it is not set forth in the plan description. So we don't get to that point. Why don't we hear from the other side? We've got your argument in the hand, and you've got 46 seconds. Great. Roberts. May it please the Court. Lawrence Rosenfeld representing Appellees-Gustill Healthcare Corporation Health Plan. I think the Court has gotten to the heart of the matter, and so I'd like to address the issues that have come up. The narrow issue before this Court is whether the trial court correctly determined that given that the bases upon which the denial of benefits was challenged in the district court were not raised during the claims administration process, whether plaintiff appellant Vaught failed, therefore, to exhaust administratively pursuant to Federal law common law principles developed under ERISA. Now, Vaught does not challenge, and I don't believe he can, that he was told no later than March 16th of 2004 that his claim for benefits had been denied pursuant to a plan exclusion clearly set forth in the summary plan description, as Your Honor referenced, denying medical benefits for injuries related to driving under the influence. And when did the plan say that? March 16th of 2004. And what's the document in which that's said? That is, that's Excerpt 16, Exhibit 7, page 3-9. This is, that's a letter from Rothko. No, let's see. Exhibit 7, that's the letter from Rothko. Then you must be thinking about something else. Aye. Are you thinking about Exhibit 8? Maybe 8. Is this the letter from Malamud? Yes. And you're saying that they've given notice as to why they denied him? Why are they saying that? The number, Arabic 1 at the bottom of the page. Page 1, specific reason for denial of coverage is driving under the influence of alcohol or drugs or client having an indicated blood alcohol level of 0.261. Yeah. And what do I make of, I would address your appeal if it were an appeal, assuming only for purposes of this letter that this is an appeal. I would address it. That's odd language, I have to say. Now, it's very clear what number 1 says. Right. And if this actually were an appeal, that might actually be an answer. But he says it's not an appeal. I think it's an answer, Your Honor, to the extent that Vaught was now on notice as to what the basis of the appeal was, what the basis of the denial was. And I think there's no mystery to you what the basis for the denial was, and there's no mystery to you as to what the basis of his appeal was. No, I disagree. I disagree with that, Your Honor, to this extent. How can you disagree with that when you've got this letter sent to you by Mr. Ronco on March 29 that keeps talking about alcohol? The whole second page is consumed with nothing but alcohol. I mean, that's so if there were an appeal, you would deny it on this basis. If there were an appeal, he'd have these questions for you. I mean, I don't get it. This is fantasy land. Neither one of you knows that this is about alcohol. No, Your Honor. It's clear that the claim was denied based on alcohol. It's clear that he wants to challenge it based on alcohol. Correct. And I want to go back to Judge B's question, which he. Judge Beyer. I'm sorry? Judge Beyer. I'm sorry. I'm sorry for the mispronunciation, Judge. I'm sorry to interrupt. That's not a problem at all. I do apologize. He's appealing the denial of a claim based on an exclusion for driving under the influence. Is he appealing because he's claiming I wasn't driving the motorcycle? I may have been intoxicated. I was a passenger. Is he appealing because he's claiming the reading was wrong? Is he appealing because he's claiming that while he was driving the vehicle, he was hit and it had nothing to do with his state of intoxication or non-intoxication? How is a court applying, say, under Firestone, an abuse of discretion standard, supposed to determine whether the plan administrator abused his discretion, assuming that's the standard applied in that case, if the issue upon which the claim was denied or if the basis upon which the claim was denied is not substantively challenged administratively? Did you ever deny his appeal? The appeal, according to Mr. Malamud's letter, the appeal was denied on the basis of the fact that despite repeated requests, and there were at least four subsequent to the letter that counsel referred to, repeated requests by Mr. Malamud that the document evidencing that Mr. Vaught had authorized Attorney Rocco to act on his behalf had not been received, or at least that he had no knowledge that such a document had been received. Can you point me to the letter that you say is the denial of the appeal? I'm sorry, Your Honor. Can you point me to the letter so we can read it together? Yes.  The excerpt of Record 16. Yeah. And that would be Exhibit 8, pages 380. Excuse me. Let me go. It's further on. Exhibit 13 at page 413. And it says at the very end, he says, we never got the authorization we requested, and actually it was requested subsequent to the letter that Mr. — that was referred to by plaintiff's counsel. It was requested on May 21st, on June 7th, on June 23rd, no response. And so Mr. Malamud says, we haven't received the authorization, and he says he concludes by saying, as a result, the original denial of benefits as set forth on the explanation of benefits must stand. That's the denial. So is he saying there was no appeal, or is he saying we received your appeal, we deny it because we don't have the authorization? I think the latter. We deny your appeal because we have no authorization that you can act on behalf of Mr. Vaught, and that that's specifically required not only by the plaintiff. No, no. That's not — that's exactly what it does not say. I'm just reading you that last full textual paragraph on page 413. Malamud writes, The fact remains that the covered person or that covered person's authorized agent being authorized in writing and sent to the claims administrator has 180 days from the date of the original post-service denial to file an appeal, and this has not been done. In other words, there has been no appeal. But he's saying that — As a result, the original denial must stand. Right. He's saying that there was a — that there was a document submitted based on which Mr. Rocco purported to be appealing on behalf of Mr. Vaught, but because he had not received the officer-requested document, he — It's not an appeal. Well, he was denying the appeal. I don't know — No, that's just not — that's exactly what it does not say. It says — he says this has not been done. As a result, I mean — No appeal. The point, though, Your Honor, is there was 180 days from the date on which Mr. Vaught was given notice of the basis for the denial of the claim. He had 180 days from that point to assert the basis of his appeal. Now, you are right, Your Honor, that the basis of the appeal — the basis of the denial was driving under the influence. But let me ask you this. Is it true that no authorization of Rocco had been ever sent or received? It appears that an authorization was sent to the claims administrator, but the plan administrator was unaware that it had happened, which is why, Your Honor, on five separate occasions, for postdating Mr. Rocco's last letter, the plan administrator requested that that document be delivered to him, and it never was. So the answer is it appears from the record that the claims administrator received it, but the plan administrator — And is there any requirement that it be sent to somebody other than the claim administrator? Well, I don't know that there is a requirement, but clearly it would have been a simple matter for Mr. Rocco to say, here's a copy of the letter that you've been — And it would have been an equally simple matter for the claim administrator to give it to the person handling the claim. Sure. No question. That could have been an error. So the premise of Mr. Malamud saying there is no appeal is wrong. The premise of him saying that there is no appeal appears to be wrong. What do you mean, appears to be wrong? It's wrong. There it is. I see the letter. It's right here in front of me. So let's assume, Your Honor, on that basis, an appeal is taken or a lawsuit is filed in the district court. And in the district court, the allegation is that the plan administrator failed to adjudicate this appeal because he was under that improper impression. How does that get the appellant past the issues exhaustion problem that he has, that is, that he never specifically raised administratively the two grounds, specific two grounds upon which he asked the district court to determine that the plan had improperly denied the claim? That's the real issue here. The issue, with respect, Your Honor, isn't whether there was an error in the plan administrator's determination that there had been no authorization received. We wouldn't have filed an exhaustion motion in the district court had the plaintiff appellant raised in the district court the issues he had raised before the plan. And those are set forth in a letter that Mr. Rocco sent twice, on January 30, 2004, and again on February 19, 2004, raising seven issues, seven grounds upon which he was challenging the determination. None of those seven grounds have anything to do with what Mr. Vaught asked the district court. And the letter he sent within a very short time thereafter, the second page, is that it's entirely filled with exactly the issue, which is to say the alcohol exclusion. It's the issue, Your Honor. It's the issue, but it's not the specific grounds upon which he is challenging the claim. How, Your Honor, for example? Hang on a second. I think Judge Akita has a question. On this issue, exclusion, exhaustion issue, exhaustion issue, sounds good. What is the basis for saying that there is any issue exhaustion requirement under ERISA? I would start, Your Honor, with the Sims decision. Which is in Social Security. Right, which first recognizes there is a general principle of issues exhaustion and then says, but Social Security Act claims are a different breed and we don't apply it to Social Security Act claims. Which says non-adversarial. And then, you know, our Amado decision says that these ERISA decisions, ERISA context is also non-adversarial. So why doesn't Sims just say in this non-adversarial context there is no requirement for issue exhaustion? One of the cases cited by the appellant, the Black & Decker v. Northgate, very clearly says that there are critical differences between the Social Security regulatory scheme and the ERISA regulatory scheme. I believe there are critical differences that justify the determination that the general principle applies to ERISA. That is the issues exhaustion principle. The Seventh Circuit has clearly taken that position. The Starr case, Seventh Circuit case, says that. Subsequent, the most recent case I could find, which was a Northern District, Illinois case, the Jacobs case clearly says issues exhaustion is required under  ERISA. Is there a Ninth Circuit case on point? No, there isn't. Either way. But. Is the Starr case an issue exhaustion or did the plaintiff just not invoke the ERISA process at all as planned? The way that the Jacobs case construed Starr is that it is an issues exhaustion case. That's how it was construed by the Northern District of Illinois in Jacobs. And on that basis, that court concluded that there is an issues exhaustion requirement. And I would argue that there is a good reason for there to be an issues exhaustion requirement. Again, going back to the point, how does a court apply the Firestone standard, whether it's abuse of discretion or whether it's de novo, in a situation where a basis for asserting judicially that the plan erred in denying the claim was never presented to the plan administrator? How does one determine whether the plan administrator abused its discretion in denying the claim on the basis of something that was never presented to the plan administrator in the first instance? Or an appeal that was never perfected. Or an appeal that was denied that it was an appeal even though it was perfected. I mean, I'm still in fantasy land with you guys. And I'm mad at both sides, if mad is the right word. Mr. Rocco could have answered, but you could have looked. I mean, there's the letter. It's right there in your file. But, Your Honor, the point is, even if we didn't file the exhaustion motion in the district court on the basis of anything having to do with that error, I fully agree with Your Honor. But wait a minute. If it had been allowed to proceed as an appeal, I've seen enough of these cases that I know there's lots of correspondence that then goes back and forth. And that correspondence would very likely have gone back and forth in such a way as the argument would have been presented in a very clear way. Instead, we get this fantasy land talk of your guys saying, well, if there were an appeal, then I might have answered. And then we get the questions from his side saying, well, give me ñ I've got all these questions about alcohol. Think about the chronology, Your Honor. The chronology is ñ I'm thinking very carefully about the chronology. I'm sure you are. The chronology is a letter is submitted identifying seven bases of appeal. Thereafter, in response to a question from Mr. Rocco, the plant administrator says the basis of the denial is under the influence of alcohol. He's also ñ Wait. Mr. Rocco. Who says this? Mr. Mellonman. He doesn't say the basis for denial is. He says if this were an appeal, I would respond as follows.  So he has specifically told Mr. Rocco, hypothetically. He's specifically told Mr. Rocco this is the basis of the denial. He also says since that was not clearly articulated before, you're going to now get 180 days to do what you've got to do, after which time we have ñ he doesn't say this, but obviously under the plan and under ERISA, the plan would then have 60 days to decide. Based on the fact ñ and again, Your Honor, for the moment, let's put aside that there's an issue about whether or not an authorization was submitted and received. Let's put it aside, because I think for purposes of this, it doesn't matter. Let's assume that in the 180-day period, Mr. Rocco gets the letter and says, oh, that's the basis. Well, I am now one to challenge that because, in fact, my client was not the driver of the vehicle. In fact, my client was not under the influence. He never did that. And now the Court is being asked to determine and decide issues that had never been presented and could have been presented. You know, I've had several responses to this. And the response I'm about to make really is more general and not specific to your argument, not specific to their argument, and so on. You know, there is a plan. It does have an exclusion. You've spent an awful lot of money. They've spent an awful lot of money. Here we are on appeal. We're spending an awful lot of time. And the question is actually very simple. Was he drunk at the time? And I don't know how we managed to waste hundreds of thousands of dollars without getting to that question. Your Honor, all that this, and I understand the frustration. And part of it belongs to your client, who couldn't find that letter in the file. And part of it belongs to Mr. Rocco, who couldn't manage to answer the question of, yes, you do have it in the file, and here's a copy, and let's get on with it. Understood, Your Honor. But, and I don't disagree with anything you've just said. But the point I, and perhaps I'm now to the point of repeating myself to the point of diminishing returns, but the point I want to make, Your Honor, is the real, the heart of the issue here is whether somebody is required to articulate administratively the grounds upon which he or she is challenging a determination. That's all that the appellant had to do here is to say one of those things. And what is so mysterious to you about the letter that Mr. Rocco sends in response to Mr. Malama's record, the whole second page of which is concerned with discussion about alcohol? It was no mystery to you or to them that alcohol was the issue. I agree, Your Honor. And if this had been an appeal, which it seems not to have been, I guess that would have been on the table. Hypothetically, Your Honor, the, let's assume the appeal goes forward, okay, that we don't have this issue. The appeal goes forward. And in the process of the plan dealing with that administrative appeal, during that 180 days, Mr. Rocco says, we are claiming that Mr. Vaught was not operating the vehicle. He was a passenger. So it doesn't matter what his blood alcohol was. And the plan says, okay, we'll consider that. And the plan considers it. And after considering the evidence, looks at the police report, and the plan says  Everything points to the fact he was the driver of the vehicle. We reaffirm the denial. They then go and file this in district court, and they switch entirely, and they say the blood, as Mr. Vaught's counsel appears to now be saying, the alcohol reading, the blood alcohol reading was wrong. How does a court, Your Honor, how does a court? You see, I would be very sympathetic to that argument if your client had treated this as an appeal. And if this had been treated as an appeal, we would have gotten past all these letters that were passing like ships in the night. We would have actually engaged on the issue. Right. But my – and, again, I understand that, Your Honor. But my point is, if then the argument shifted, this is – I'm simply explaining why issues exhaustion must be the requirement under ERISA. I'm not saying that it must be, but I'm certainly not sure that it must be in this case where you didn't treat it as an appeal. The point being, Your Honor, if those issues – he had 180 days to raise those issues. Had he raised those – Had it been an appeal. Had you treated it as an appeal. And you had a certain amount of time to decide an appeal, and you never decided it. You said this is not an appeal. But, Your Honor, there is a letter from Mr. Rocco, two letters, where he says the bases of the appeal are as follows. He listed seven grounds. Why couldn't he have listed the two additional grounds that he used as the basis for going up and seeking review by the court? I'm sorry, yes. You know, assuming – sorry for interrupting. Assuming this was an appeal, and whether it was denied or the plan took no action, the appeal had been taken. Do you need for us to determine that there is issue exhaustion, which would be a new determination here in the Ninth Circuit, in an ERISA plan in order for your client to win, to prevail? I think, yes, Your Honor. I think that's precisely the basis upon which we move for summary judgment and upon which the court granted summary judgment, that there had been no issue exhaustion. That's exactly – that's the sole basis, as I said when I began. I have 30 seconds left. But when I began, I said that is the narrow issue before this Court. I still believe that to be the case. But if that's an unsettled issue, will we have to write an opinion? I would never say you have to do anything, Your Honor. But that's the issue for the Court, I believe, because that's the basis upon which summary judgment was granted. There's no ignoring that. That is the sole basis upon which we move for summary judgment. How can we – how can we find that there's a requirement that there be issue – exhaustion on – during the administrative appeal if your people are saying that this was not an appeal? Because, Your Honor, the – I mean, aren't you a little bit stopped a little bit? I don't believe so, Your Honor, because bear in mind, again, Mr. Rotko raised seven grounds. He could not have known at the time he was raising those grounds or in the 180 days after March 6th, March 14th, when he was informed that this – you know, if it was an appeal, these are the reasons for the appeal. He could not have known that six months later a determination would be made that there was not a perfection of the appeal. Because during those six months, he could easily have supplied the letter. I agree we also could have found the letter. But the bottom line is he had 180 days from March 16th – I think I said the 14th, I think it's the 16th – to identify all of the bases upon which he was seeking to appeal. He identified seven. None of those seven were the bases upon which Mr. Vaught asked the district court to review the denial of the claim. And that's why I think there is an issues exhaustion point that has to be addressed by the court. Thank you, Your Honors. And, again, I apologize for mispronouncing your name, Your Honor. That's quite all right. It's been a long time. Response. The mention was made of the abuse of discretion standard. That was not an issue in the district court. It was premature. However, they did argue that we are precluded from raising that now, that the de novo standard should apply. They're wrong. It was raised in the district court. It was raised in our response to the motion for summary judgment when the Mon Jalouzo case was cited, which is the ERISA seminal case in the Ninth Circuit that says that a district court may look beyond the administrative record when it's necessary to fully inform the decisions. And that case was cited specifically on the basis that a de novo review would be appropriate. And the reason it's appropriate is because this case – they refused and failed to act on the appeal. And according to the Abadi case, which cites Jevion with approval, which Jevion held that de novo rule applies, de novo standard applies where there's no discretion rendered by the plaintiff administrator, which is what we have here. We have a situation where they did not exercise any discretion, so the district court and this court really has no discretion to which to defer. De novo should apply. You finally got that. I'm quick. There were other issues here. I know I'm out of time. If there are questions. Thank you very much. Thank both of you for your useful argument. And just in case people don't think ERISA cases are interesting, they should listen to the argument today. ERISA cases can be quite interesting. Thank you very much. The case of Vaught v. Scottsdale Healthcare Corporation Health Client is submitted for argument and we're adjourned for the day.
judges: Fletcher, Bea, Ikuta